## JOHN COPPEDGE v. STATE.

No. A-3597.    Opinion Filed June 18, 1921.
(198 Pac. 623.)

(Syllabus.)

Homicide — Manslaughter in First Degree — Sufficiency of Evidence. In a prosecution for murder, evidence held to sustain a conviction of manslaughter in the first degree, and that no material error was committed on the trial.

Appeal from District Court, Hughes County; Geo. C. Crump, Judge.

John Coppedge was convicted of manslaughter in the first degree, and he appeals. Affirmed.

J. L. Skinner and Anglin & Hall, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

DOYLE, P. J. On November 18, 1919, an information was filed in the district court of Hughes county, charging appellant, John Coppedge, and his brother, Will Coppedge, jointly, with the crime of murder for having killed one Carl Morris in said county on or about the 4th day of October, 1918. Appellant asked and was given a separate trial, which resulted in his conviction of manslaughter in the first degree, leaving the punishment to be fixed by the court. The motion for a new trial was overruled, and on April 19, 1919, the court rendered judgment and sentenced appellant to imprisonment in the penitentiary for the term of 15 years. From the judgment he appeals. The errors assigned are:

(1) That the court erred in overruling the motion for new trial.

(2)   That the verdict of the jury was contrary to law and the evidence.

(3)   That the court admitted incompetent testimony against the defendant and rejected competent and material testimony offered by the defendant.

(4)   That the court erroneously instructed the jury.

No brief has been filed on behalf of appellant, and we have not been favored with an oral argument in his behalf; however, we have carefully examined the record for alleged errors upon which this appeal is based. It appears that the parties were all farmers and lived neighbors; that the appellant and his codefendant married sisters of Carl Morris, the deceased; that appellant and the wife of the deceased had been criminally intimate, and a short time before the homicide they each admitted this fact to the deceased in the presence of each other; that just before sundown on the date alleged appellant and his brother drove into a wagon yard in Holdenville; that Carl Morris, the deceased, walked through the gate, and appellant, standing in the wagon, fired the fatal shot.

Briefly stated, the testimony with reference to the killing was as follows:

W. G. Blankenship, a farmer, who it appears was not acquainted with any of the parties, testified:

"I saw the defendants drive in with a bale of cotton standing on end in their wagon. One jumped off the wagon and the other was standing by the cotton bale facing the gate; as I walked away I passed the man that was shot. He was walking along eating an apple. Within a minute I heard the shot and returned to the yard. The man was lying four or five steps within the gate. He had a gunshot wound in the forehead. He never spoke. He was lying 15 or 20 steps from the wagon."

Will Dial testified:

"I was there when the defendants drove into the yard. I heard Will Coppedge say to John Coppedge, 'You do what I told you to do.' There was a bale of cotton in the wagon. I was standing at the head of the team unhitching when John Coppedge, standing behind the cotton bale, shot Carl Morris. He was about 50 feet from the wagon when he fell. John Coppedge jumped out of the wagon and ran up to where he was lying and cocked the gun, and then I went under the shed."

R. C. Brown testified:

"I am a farmer, living seven miles southwest of here. I was in the wagon yard, but my back was turned when the shot was fired. I was about halfway between this wagon and where the man fell. I saw the defendant with a gun after the shot was fired. He was on the ground pulling the hammer back on his gun and walked toward the man that was down; it was about 18 to 20 steps from the wagon to where the man was lying; I did not know any of the parties at that time."

Toney Ashland testified:

"I live in Seminole county; I was standing near the camp house in the wagon yard when John Coppedge shot Carl Morris. I heard Will Coppedge say to John Coppedge, 'Go and see if the son of a bitch is dead.' John got out of the wagon, and I went into the barn. Carl Morris was in his shirt sleeves."

E. W. Morris testified:

"I was on my way to the wagon yard when I heard the shot fired. I walked in and saw a man nearly dead with a gunshot wound over the right eye. I picked up a piece of apple that was lying near his left hand. It had been freshly cut."

Price Ashland testified:

"I was something like six steps from the Coppedge wagon when Carl Morris was shot. I saw the Coppedge boys drive in the yard with a bale of cotton standing on end in the

wagon. Will got out. John stayed in the wagon. I saw Carl Morris when he had taken a step or two into the yard. He was walking along like anybody would walk. The shot fired, and I saw him fall. John Coppedge was standing up in the wagon with a bale of cotton between him and Carl Morris. John Coppedge jumped off of the wagon, and Will Coppedge says, 'Go and see if the damn son of a bitch is dead.' Carl Morris was 15 to 18 steps from the wagon when John shot him.''

For the defense Will Coppedge testified:

''The day of the killing I brought a bale of cotton to town. Late in the evening I was sitting on the curb. My brother was standing on his wagon in front of the American National Bank selling a bale of cotton. He called me, and I went over and got in his wagon. Mr. Loftis said it was too late to weigh the cotton, and we decided to go to the wagon yard and wait until morning to weigh the cotton. He handed me the lines, and we started to the McDonald wagon yard. Near Dennis' corner Carl Morris stepped towards us and shook his fist at us. I drove into the wagon yard and got out of the wagon. John started to get out, and I said, 'You do what I told you to do.' Bill Dial, a brother-in-law to Carl Morris was there, and said, 'Will, what is the matter?' and I says, 'Carl is trying to kill John,' he said, 'Can't it be stopped?' We were unhitching the mules. John was standing next to the bale of cotton. The gun fired, and I looked around and saw Carl fall.''

As a witness in his own behalf the defendant testified:

''I am 33 years old; brother-in-law to Carl Morris, the deceased. I bought a bale of cotton to town that day and stopped in front of the American National Bank. I saw my brother, Will, and called him and asked him to go to the compress with me. The bale of cotton was in the back end of the wagon. Mr. Loftis wrote me a ticket and said, 'You can't get that cotton weighed now; it is too late.' The sun was not down. We drove on down to the wagon yard, and just before we got there I saw Carl Morris standing on the corner. As we went by he stepped out six or seven steps, shook his fist and said, 'Damn you,' or something like that. I said, 'Will, drive up and let's get away from here, Carl is here

to kill me.' Will says, 'I will drive down to the yard; you stay in the wagon and I will stop it.' Carl took out after us. Will drove into the yard and jumped off the wagon and says, 'You do as I told you; now stay in the wagon.' About that time Will Dial walked up and said, 'What is the matter here?' I stepped back by the side of the bale of cotton where I could watch the gate; Carl Morris came in the gate and reached back like he was going after a gun or something in his pocket. He always carried a pistol. He had something in his hand. I thought he had a pistol. My gun was wrapped up in my coat. I looked the other way and saw Leland Morris, Carl's brother, coming out from under the shed. It just came to my mind that they were framing up there. I reached down to my coat, got my gun up and shot. Carl was about 10 or 12 steps from me. He was mad and muttering something. I shot because I was scared and I thought he was going to shoot me. I jumped out of the wagon and cocked my gun again and looked towards the shed where the other boy had come out, and he was going back; then I went out on the street and surrendered."

In rebuttal Wyle Evett testified:

"I was in the yard when John Coppedge shot Carl Morris. I heard a gun and saw the defendant standing in the wagon behind the bale of cotton. His arm and gun were directly over the cotton bale."

Leland Morris testified:

"I was in the barn when the shot was fired. Some fellow said, 'A man has been killed out here.' I was tying the team in the barn. My brother did not own a gun at the time he was killed. I do not remember of him ever owning any gun, but a 22 target."

Willie Morris testified:

"I am the widow of Carl Morris. I have three children living and two dead. The oldest is six, the next one three, and one nine months old. My husband did not own a pistol of any kind."

We deem it unnecessary to detail further the facts disclosed by the record. No one can review the testimony in

the case without being impressed with the belief that appellant lant should have been found guilty of murder. The only basis for the verdict of a lower degree of homicide is the testimony of appellant "swearing his own neck out of the halter." As we view the evidence, the only debatable question in the case for the jury to consider was whether the punishment to be assessed should be death or imprisonment for life. The record shows that no objection was made or exceptions saved to the evidence on behalf of the state, and that the testimony offered in behalf of appellant and rejected was either hearsay or self-serving declarations.

The court by its instruction authorized the jury to convict appellant of murder or manslaughter in the first degree, or acquit him on the ground of self-defense. No objections were made or exceptions taken to the instructions, which fully and fairly covered the law of the case. After considering all the errors assigned, we are of opinion that there was no error which could have been prejudicial to appellant, and the judgment is affirmed.

MATSON and BESSEY, JJ., concur.